UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL SCOTTO, et al.,

                Plaintiffs,

- against -

HSN, INC., et al.,

                Defendants.
------------------------------------------------------------X

MEMORANDUM & ORDER
13-CV-2471 (ENV) (RLM)

VITALIANO, D.J.

On April 24, 2013, plaintiffs Michael Scotto and Diane Scotto sued defendants HSNI, LLC, ("HSNI"), WP Appliances, Inc. ("WP Appliances"), Zhanjiang Hallsmart Electrical Appliance Co. Ltd. ("Zhanjiang") and Hallsmart Enterprises Ltd. ("Hallsmart").[1] Brought as a § 1332 diversity case, the complaint asserts claims for negligence and strict products liability, as well as breach of warranty for injuries Michael Scotto allegedly sustained by the malfunctioning of an electric pressure cooker designed, manufactured and sold by defendants.[2] Defendants now move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment. For the reasons set forth below, the motion is denied.

---

[1] Also named in the original complaint was Wolfgang Puck Worldwide, Inc. The action against that defendant was voluntarily dismissed on March 14, 2014. Dkt. Nos. 39-40. The action as to WP Productions, Inc. and HSN, Inc. was voluntarily dismissed on March 28, 2014. Dkt. Nos. 41-44.

[2] Diane Scotto's claim is solely for lost consortium. A manufacturing defect claim originally interposed by plaintiffs has since been dismissed. See Pl. Br., Dkt. No. 73-26, at 23.



Background

In March 2012, plaintiffs were gifted a brand new Wolfgang Puck Bistro Collection Electric Pressure Cooker.[3] Def. R. 56.1 Stmt., Dkt. No. 70-1, ¶ 9. As is typical of such kitchen appliances, the pressure cooker relies on high temperatures to produce steam that would, under pressure, efficiently cook food. Bailey Rep., Dkt. No. 73-8, at 1. When functioning as designed, the lid of the appliance was sealed through the operation of a 'float valve,' a sort of plunger, that, when forced by pressure into the 'up' position, sealed the lid by pushing out a metal pin. Id. at 6-8. Conversely, when pressure in the cooker was lowered and the float valve returned to the "down" position, the metal pin would retract, allowing the lid to open. Id. The appliance's steam release dial is designed to alert the user that the pressure level has lowered, and, in the 'vent' position, the sound of steam escaping from the valve is audible, as the appliance releases pressure. See id. at 3. Upon full evacuation of the steam, the lid is supposed to open freely. Pl. R. 56.1 Ctr. Stmt., Dkt. No. 73-1, ¶ 14.

Plaintiffs were well aware of these features. The Scottos say that, immediately after removing the pressure cooker from its original box, they read the entire product manual, and that Michael Scotto even highlighted certain sections of the manual. Def. R. 56.1 Stmt. ¶ 10; Pl. R. 56.1 Ctr. Stmt. ¶ 68. In particular, he highlighted a section instructing users: "Do not open the pressure cooker until it has cooked and the internal pressure has been released." Def. R. 56.1 Stmt. ¶ 11. Beyond that, he highlighted a section warning users that they should "never attempt to open the lid while cooking or before pressure indicator has dropped." Id. ¶ 13. Rather, as

---

[3] The facts are drawn from the complaint, depositions, exhibits, Rule 56.1 statements and affidavits submitted by the parties on the motion. All reasonable inferences are drawn in favor of plaintiffs, as the non-moving parties. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

2

described in a section of the user's manual that he also highlighted, "[p]ressure is completely reduced when the steam release dial is in the vent position . . . and you no longer hear the steam escaping from the valve and the lid opens freely with no force." Id. ¶ 14. Plaintiff also read and highlighted the section of the manual stating "[a]s a safety feature the lid will not open unless all pressure is reduced." Id.

These cautionary instructions, plaintiffs allege, proved inadequate. On May 26, 2012, Diane Scotto was using the pressure cooker to cook chicken soup, and asked her husband to open the lid. Id. ¶ 15; Pl. R. 56.1 Ctr. Stmt. ¶ 70. Michael asked Diane if she was certain that it was safe for him to do so, and she responded that it was because the pressure had been released. Def. R. 56.1 Stmt. ¶ 15. Hearing no steam emanating from the appliance, Michael Scotto claims he was met with no resistance as he began to open the lid. Id. ¶ 16; Pl. R. 56.1 Ctr. Stmt. ¶ 60.

Yet, he relates, once he started to lift the lid, he suddenly felt great pressure surging up at him. Def. R. 56.1 Stmt. ¶ 16. He pushed his wife out of the way but was not fast enough to save himself. The lid, he said, flew off, and the pressure cooker spewed its steaming contents onto his abdomen, chest, legs and groin. Pl. R. 56.1 Ctr. Stmt. ¶¶ 63, 83. Diane Scotto would later describe the sound of the occurrence as being like an explosion. Pl. R. 56.1 Ctr. Stmt. ¶ 84.

Defendants strike out at what they contend is plaintiffs' impossible version of events. They offer in opposition, that the metal pin placement makes it impossible to open the lid before the contents have cooled, absent, of course, the application of tremendous force (by Michael Scotto) to do so. See Def. Reply Br., Dkt. No. 74, at 5. In this posture, experts, to be sure, are on the front lines. For instance, as a result of his replication of the claimed events, plaintiffs' expert, engineer Mark Bailey, found that, not only was it possible for the pressure cooker to be opened under active pressure of operation, but also, when he replicated the claimed occurrence,

3

he concluded that the unforced lid opening was precisely what had happened to the Scottos. Pl. R. 56.1 Ctr. Stmt. ¶ 88. He explained that, because of a design defect, the holding pin only inhibited, rather than prevented, the lid from opening. Id.

Moreover, Bailey stated at his deposition and in his amended report[4] that a feasible alternative design was used in a different 8-quart model of the appliance, also distributed by defendant WP Appliances. Def. R. 56.1 Stmt. ¶ 49. In particular, Bailey identified four improvements to the other model: the material used to hold the pin was made of steel rather than aluminum; the float valve was pressed into the lid instead of attached with hardware; there was less clearance where the pin entered; and the wiggle room in the body of the float valve was decreased. Id. ¶ 50.

The defense expert, engineer Michael Burr, found otherwise.[5] He concluded, on the basis of his forensic testing and analysis, that the outer pot lid of Scottos' pressure cooker showed significant wear and a prominent indentation, which were, he opined, consistent with the use of great force to pry the lid open after the pin locked in and the cooker was under pressure. Id. ¶ 17.

---

[4] Bailey did not discuss alternative designs in his first report produced on October 29, 2014; instead, he amended his original report approximately two months later, on January 9, 2015. Bailey Dep., Dkt. No. 73-9 & 73-10, at 55. On January 23, 2015, defendant HSNI requested a "ruling pursuant to FRCP 37(c)(1) precluding plaintiff from offering the opinions of expert Mark Bailey [set out in the January 9 report] concerning alternative design and warnings." Dkt. No. 65. HSNI objected on the grounds that the opinions were produced "the business day prior to the expert's deposition, without Court permission and well beyond the October 31, 2014 deadline for expert disclosure." Id. It appears as though HSNI withdrew this request on March 12, 2015. Dkt. No. 68 ("[T]his letter is to advise the Court that all parties have conferred and have now resolved all disputes as to Plaintiffs' expert disclosure, and that there is no need for a Rule 37 motion."); Dkt. No. 73 at 1 n.2.

[5] Plaintiffs' request to exclude engineer Michael Burr, presented for the first time in its opposition to defendant's motion for summary judgment, is denied. See e.g., Louis v. N.Y.C. Hous. Auth., 152 F. Supp. 3d 143, 158 (S.D.N.Y. 2016) ("[P]laintiffs cannot use their opposition . . . to raise new claims or arguments.") (citation omitted).

The appliance Michael Scotto claimed spewed its contents, he said, showed, moreover, no indication of any malfunctioning safety mechanisms. Id. Rather, Burr concluded, had Michael Scotto waited until the lid moved freely, the pressure would have been released and no liquid expulsion would have occurred. Id.

In addition to their design defect claim, plaintiffs maintain that the instruction manual – which, as noted, they admit they read prior to the occurrence, and, indeed, highlighted – failed to warn them of the dangers inherent in the pressure cooker. Plaintiffs fault the instructions for failing to illustrate to the user what the pressure indicator is; inform users that it may take up to 30 minutes to vent the pressure; and provide instruction or warning – more than the manual – on the lid that advised users not to forcibly open the lid (a warning that the lid of the other model bore); and for being false and misleading. Pl. R. 56.1 Ctr. Stmt. ¶ 88. To that end, Bailey offered his opinion that the instructions in the manual were contradictory because some directed users not to attempt to forcibly open the lid, whereas others instructed users that the lid would not open unless all the pressure was reduced. Id. ¶¶ 93, 94.

## Standard of Review

A district court must grant summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A motion court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but, rather, to "determine whether there *are* issues of fact to be tried." Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)) (emphasis in original). The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, see

5

Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005), and all ambiguities will be resolved and all permissible factual inferences drawn in favor of the party opposing the motion. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004); Gummo v. Vill. of Depew, 75 F.3d 98, 107 (2d Cir. 1996) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party. See Fed. R. Civ. P. 56(e). The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Pointedly, the nonmoving party must "make a showing sufficient to establish the existence of [each] element . . . to that party's case . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23. If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986) (internal citations omitted).

## Discussion[6]

A. Failure to Warn

Under New York law, which, no one questions, controls here, it is well-settled that "the supplier of a product which it knows or should know is dangerous if used in the usual and

---

[6] Courts have noted that, for the purposes of analyzing a design defect claim and a failure to warn claim, the theories of strict liability and negligence are virtually identical. See Colon ex rel. Molina v. BIC USA, Inc., 199 F. Supp. 2d 53, 84 (S.D.N.Y. 2001) ("Failure to warn claims

expected manner [has a duty to] adequately . . . warn users of the product of the danger unless the danger is obvious or well know." See Billiar v. Minn. Mining & Mfg. Co., 623 F.2d 240, 243 (2d Cir. 1980). Naturally, several considerations affect the adequacy of a warning, including "whether the warning sufficiently conveys the risk of danger associated with the product and is qualitatively sufficient to impart the particular risk of harm." Santoro ex rel. Santoro v. Donnelly, 340 F. Supp. 2d 464, 485-86 (S.D.N.Y. 2004). "The adequacy of the warning in a products liability case based on a failure to warn is, in all but the most unusual circumstances, a question of fact to be determined at trial." Cooley v. Carter-Wallace Inc., 102 A.D.2d 642, 642, 478 N.Y.S.2d 375, 376 (4th Dep't. 1984); see also Urena v. Biro Mfg. Co., 114 F.3d 359, 366 (2d Cir. 1997) ("The adequacy of the instruction or warning is generally a question of fact to be determined at trial and is not ordinarily susceptible to the drastic remedy of summary judgment.") (citation omitted); Santoro, 340 F. Supp. 2d at 489.

To be sure, both sides agree on what language appears in the user's manual that came with the subject pressure cooker. They also acknowledge that Michael Scotto reviewed the manual closely. Though the user's manual has explicit warnings – that a jury may well determine were sufficient to put Michael Scotto on notice as to the dangers associated with the pressure cooker – there are issues of triable fact as to the clarity and adequacy of those instructions taken together. Did the collection of them provide an adequate warning?

The collection of warnings in the manual provides:

- Do not open the pressure cooker until [it] has cooled and internal pressure has been released. If the lid is difficult to open, this

---

are identical under strict liability and negligence theories of recovery."); Searle v. Suburban Propane Div. of Quantum Chem. Corp., 263 A.D.2d 335, 338, 700 N.Y.S.2d 588, 591 (3d Dep't 2000) ("[I]n a design defect case, there is almost no difference between a prima facie case in negligence and one in strict liability.") (citation omitted).

7

> indicates that the cooker is still pressurized – do not force it open. Any pressure in the cooker can be hazardous.
>
> - Never attempt to open lid while under pressure!!! Always open pressure cooker with the lid facing away from you.
>
> - Never attempt to open lid while cooking, or before *pressure indicator* has dropped. Do not attempt to defeat this safety feature by forcing it.
>
> - Pressure is completely reduced when the Steam Release Dial is in the Vent position, (see Figure 2) and you no longer hear steam escaping from the valve, and the lid opens freely with no force. Only then is it safe to remove pressure cooker lid and serve food. Remove lid by grasping the handle and twisting lid counter-clockwise. *As a safety feature, the lid will not open unless all pressure is reduced.* DO NOR [sic] forrce [sic] the lid open if it does not open freely, this means that the unit is still under pressure.

User's Manual at 2, 6, 8 (emphasis added).[7] Focusing on the final instruction above, as plaintiffs argue, a user may very well interpret this instruction to mean that, if the steam release dial is in the vent position (which Diane Scotto says that it was), and if the user no longer hears steam escaping from the pressure cooker (which Michael Scotto claims he did not), the user must attempt to open the pressure cooker lid in order to determine whether the cooker is still pressurized. See Pl. Br. at 20; Diane Scotto Dep., Dkt. No. 73-6, at 46-47; Michael Scotto Dep., Dkt. No. 73-5, at 32-35. The user would presumably be entitled also to take comfort in the "safety feature" outlined in the manual, namely, that "the lid will not open unless all pressure is reduced." User's Manual at 6.

The Court is not unaware that, in another section of the manual, users are directed that they are never to attempt to open the lid "before [the] pressure indicator has dropped". User's Manual at 6. Taken in a vacuum, this warning operates as a clear directive to the user.

---

[7] All citations to pages of the user manual refer to the Electronic Case Filing System ("ECF") pagination.

8

Nevertheless, triable issues of fact exist with respect to whether this warning must be read in conjunction with the steam-release-dial-instructions discussed above. Indeed, the author of the user's manual stated during deposition, both that the pressure indicator was part and parcel of the analysis for determining whether the lid can be removed, Sanseverino Dep., Dkt. No. 73-16 & 73-17, at 59-62, and also that a user is to make such a determination by "rely[ing] on the pressure release valve, no resistance in the lid and that all steam is released[.]" Id. at 94.[8]

In sum, there are "genuine issue[s] of material fact as to whether the provided warnings were adequate to prevent [Michael Scotto]'s injuries." Santoro, 340 F. Supp. 2d at 489; see also Roman v. Sprint Nextel Corp., No. 12-CV-276 VEC, 2014 WL 5026093, at *15 (S.D.N.Y. Sept. 29, 2014) ("[W]hether the warnings were adequate is a question of fact for the jury.").

B. Design Defect

The reports of the dueling experts place the genuine dispute of material fact as to the propriety of the pressure cooker design in stark relief. The expert for plaintiffs opines that the appliance's pin-lock system was not properly designed to keep the lid in place when the pressure cooker was still under pressure, supporting Michael Scotto's testimony that his injuries resulted from normal use of the pressure cooker in accordance with the user's manual. Pl. Br. at 8. On the opposite side, the expert tendered by the defendants opined that groove marks he found on the inner rim of the Scotto's pressure cooker demonstrated that significant force was applied to

---

[8] The pressure indicator itself is curiously absent from the "Know your Electric Pressure Cooker" diagram provided in the user's manual. See User's Manual at 4. Plaintiff contends that this is a fundamental flaw in the manual, and that "[h]ad Mr. Scotto known to consult the Pressure Indicator to see if there was still pressure in the unit, the accident would not have occurred." Pl. Br. at 20. An expert for defendants who examined the instruction manual provided that the pressure indicator "probably should have [been] identified . . . in the manual." McGrath Dep., Dkt. No. 73-15, at 66-67.

9

the lid while it was still under pressure, in direct violation of the warnings that Michael Scotto admitted he had read in the user's manual. Def. Reply Br. at 6.

"[W]here, as here, there are conflicting expert reports presented, courts are wary of granting summary judgment." Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 79 (2d Cir. 2002) (citations omitted) (reversing district court's summary dismissal in light of contradiction in expert reports); see also Iacobelli Constr. v. Cty. of Monroe, 32 F.3d 19, 25-26 (2d Cir. 1994) (same); In re Joint E. & S. Dist. Asbestos Litig., 964 F.2d 92, 96 (2d Cir. 1992) (same). Clearly, the expert reports create a fundamental dispute of facts material to the design defect claim.

Defendants also argue that summary judgment is warranted on the design defect claim because (1) plaintiffs cannot establish that the pressure cooker violates any applicable regulations or standards and (2) plaintiffs failed to identify any feasible alternative design. Def. Br. at 14-21. Triable issues of fact exist with respect to each of these issues as well.

For design defect causes of action, while industry standards are not dispositive, "they may provide relevant evidence" in determining the existence of such a defect. Sanchez v. Fellows Corp., No. 94 CV 1373 (FB), 1996 WL 507342, at *4 (E.D.N.Y. Sept. 4, 1996). Here, while both parties appear to agree that the Underwriters Laboratories Inc. Standard for Safety ("UL Standard") applies, plaintiff and defendant dispute which provisions are applicable to the pressure cooker at issue. To be sure, no one appears to dispute that UL Standard 1026, entitled "Standard for Household Electric Cooking and Food Serving Appliances" applies to the appliance. Bailey Dep. at 66. Moreover, the parties agree that "[t]here's no numerical requirement in UL 1026 regarding the maximum force needed to open the lid of [an] electric

pressure cooker[.]" Id. at 67. The main dispute lies in whether UL Standard 1026 is the *"only regulation expressly relevant"* to the pressure cooker here. See Def. Br. at 14 (emphasis added).

Plaintiffs' expert submits that UL 136, entitled "Standard for Pressure Cookers" also applies, given the content of the guideline, based on email communications with Underwriters Laboratories, and because "136" was stamped on the bottom of other exemplar pressure cookers of the same model as the Scotto's appliance – though not the Scotto's appliance specifically. Bailey Dep. at 29, 62; see also Dkt. No. 73-18 at P119. Countering this, defendants offer that the text of UL 136 explicitly precludes the application of this regulation to an "electric" pressure cooker. See UL 136, Dkt. No. 73-19, § 1.1 ("These requirements cover household-type cooking utensils known as pressure cookers or pressure sauce pans which operate at a nominal pressure of 15 psig (103 kPa) or less. They are intended for use over gas- or electric-top burners of residential-type cooking ranges."). This type of interpretive dispute is precisely the type that gives rise to an issue of fact and that makes summary judgment inappropriate. See Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992).

Finally, defendants submit plaintiffs have failed to put forth a feasible alternative design, and that summary judgment is warranted on this basis as well. "Under New York law, in a design defect case[,] a plaintiff is required to prove the existence of a feasible alternative which would have prevented the accident." Rypkema v. Time Mfg. Co., 263 F. Supp. 2d 687, 692 (S.D.N.Y. 2003). The proof of a safer alternative design can come in one of two forms: "(1) an expert demonstrating, through testing and construction of a prototype, that an alternative is feasible, practical, economical, and safe; or (2) an expert identifying manufactures of similar equipment that have put the proposed design into use." Mathis-Kay v. McNeilus Truck & Mfg., Inc., No. 06-CV-815S, 2011 WL 4498386, at *7 (W.D.N.Y. Sept. 27, 2011).

11

In this case, in plaintiff's amended expert report, produced January 9, 2015, Bailey discussed his inspection of another, newer pressure cooker – the Wolfgang Puck BPCRM800 (the "8 quart model"). Bailey identified four improvements to the newer model: the material used to hold the pin was made of steel rather than aluminum; the float valve was pressed into the lid instead of attached with hardware; there was less clearance where the pin entered; and the wiggle room in the body of the float valve was decreased. Def. R. 56.1 Stmt. ¶ 50; Bailey Dep. at 105-110; Bailey Rep. at 11, 18. Moreover, Bailey went on to conclude that:

> A newer Wolfgang Puck pressure cooker model BPCRM800 used the same lock design principle, but replaced the aluminum slider with a stiffer steel one, and had reduced or zero clearances on the moving parts. The cost difference between the aluminum and steel sliders would be negligible, and steel is readily available. This led to a large improvement in lid opening resistance. Further refinements in the clearances between moving parts would lead to a mechanism that prevent, instead of inhibited, lid opening while pressurized. These refinements would not have an effect on the functioning of the pressure cooker.

Bailey Rep. at 21-22.

Defendants challenge Bailey's examination and testing (which they cast as a lack of testing) of the 8 quart model. Though "the Court recognizes that defendants have pointed to potential flaws in [Bailey]'s methodology[,]" plaintiffs have, however, created a material issue of fact as to whether feasible alternative designs existed at the time of manufacture. Humphrey v. Diamant Boart, Inc., 556 F. Supp. 2d 167, 178 (E.D.N.Y. 2008); see also id. ("Although defendants criticize [the expert]'s lack of testing as to an alternative design, such testing is not required to establish feasibility if the expert can point to an existing design in the marketplace . . . ."); Ganter v. Makita U.S.A., Inc., 291 A.D.2d 847, 847, 737 N.Y.S.2d 184, 185 (4th Dep't 2002) ("[T]he affidavit of plaintiff's engineer raises issues of fact whether . . . there were feasible

alternative designs at the time of manufacture [.]"); Ruthosky v. John Deere Co., 235 A.D.2d 620, 622, 651 N.Y.S.2d 717 (3d Dep't 1997).[9]

Simply, summary judgment on the design defect claim is most inappropriate and is denied.

C. Breach of Implied Warranty[10]

Defendant HSNI moved for summary judgment as to plaintiffs' breach of implied warranty claim.[11] HSNI Br., Dkt. No. 72-15, at 15. While similar to claims sounding in strict liability, "it is not true as a matter of law that all breach of implied warranty claims are mere doppelgängers of their more modern strict products liability cousins." Donald v. Shinn Fu Co. of Am., No. 99-CV-6397 (ARR), 2002 WL 32068351, at *4 (E.D.N.Y. Sept. 4, 2002). Indeed, it

---

[9] Defendants reliance on this Court's opinion is Beruashvili v. Hobart Corp., 2010 U.S. Dist. LEXIS 146015 (2010) is misplaced. In Beruashvili, the expert had "not identif[ied] any other [product], past or present, which incorporate the features of his proposed design[,]" id. at *9, and had only examined the subject product, reviewed discovery materials, and researched statues and regulations before issuing his report, id. at *23. Here, expert Bailey did more, including running tests on exemplar pressure cookers and, apparently, determining that it took more force to open the lid of the 8-quart pressure cooker. See Bailey Rep. at 11, 18 (noting that the "design change of the metal slider from aluminum to steel and from an oblong slot to a keyhole shape made the locking mechanism on the [8 quart model] more effective[,]" and that "it took double the force to open the lid on the [8 quart model]").

[10] All parties appear to be in agreement that there is no breach of express warranty claim in this case. See generally, Dkt. No. 75-1 at 8. In any event, plaintiffs failed to respond to HSNI's motion for summary judgment as to any express warranty, and summary judgment would have been granted in HSNI's favor. The agreement of the parties on that issue renders any such motion academic.

[11] Defendants WP Appliances, Zhanjiang, and Hallsmart did not move for summary judgment as to this claim in their opening brief, see generally, Def. Br., Dkt. No. 71, and any attempt to incorporate this argument by virtue of including it in their reply brief is denied. See ABN AMRO VERZEKERINGEN BV v. Geologistics Ams., Inc., 485 F.3d 85, 97 n.12 (2d Cir. 2007) ("We decline to consider an argument raised for the first time in a reply brief"); Clubside, Inc. v. Valentin, 468 F.3d 144, 160 (2d Cir. 2006) ("[W]e generally do not consider arguments that are raised for the first time in a reply brief"); Patterson v. Balsamico, 440 F.3d 104, 114 (2d Cir. 2006).

13

might be said that a "breach of implied warranty claim is the 'stricter' form of liability, since recovery hinges only upon a showing that the product is not minimally safe for its intended purpose . . . ." Id. (emphasis added) (citing Denny v. Ford Motor Co., 87 N.Y.2d 248, 259, 662 N.E.2d 730, 736 (1995); cf. Castro v. QVC Network, Inc., 139 F.3d 114, 119 (2d Cir. 1998) (finding that jury must be charged separately on breach of warranty and strict liability claims).

Plaintiffs argue that the pressure cooker was not fit for ordinary use given that it opened freely while still under pressure. Defendant HSNI protests that this claim is merely duplicative of the strict liability claim, and, in any event, viewing the record in the light most favorable to the plaintiffs, it does not support a claim for breach of implied warranty. Of course, some, if not all, of the factual disputes that plague the design defect claim are at issue, and summary judgment on this claim is inappropriate as well. So, this branch of the motion is denied, too.

D. Indemnification

Defendant HSNI has also asserted a cross claim for contractual indemnification against co-defendant WP Appliances, and a cross claim for common law indemnification against co-defendants WP Appliances and Zhanjiang. HSNI Br. at 7-9. No response has been received from co-defendants, nor was it the subject of a separate pre-motion conference request, i.e., outside of its inclusion in HSNI's January 23, 2015 letter, see Dkt. No. 65, that, ordinarily, would have called attention to a motion for summary judgment and provided for its scheduling. Accordingly, this branch of HSN's summary judgment motion is severed, and administratively terminated. Upon a briefing schedule approved by the Court, it may be renewed on the original papers filed by HSNI, and WP Appliances and Zhanjiang will be afforded the opportunity to respond. See Dkt. No. 72.

## Conclusion

For the foregoing reasons, summary judgment with respect to the failure to warn, design defect, and breach of implied warranty claims is denied. The motion seeking indemnification is administratively terminated with leave to renew.

Notwithstanding open issues attendant to indemnification, counsel are directed to contact United States Chief Magistrate Judge Roanne L. Mann expeditiously to arrange for a conference leading to the entry of a final joint pretrial order and the scheduling of a trial on the issues of liability only.

So Ordered.

Dated: Brooklyn, New York
October 7, 2016

/s/ USDJ ERIC N. VITALIANO
ERIC N. VITALIANO
United States District Judge