UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MICHAEL SCOTTO, et al.,

                       Plaintiffs,      MEMORANDUM & ORDER
                                            13-CV-2471 (ENV) (RLM)
      - against -

HSNI, INC., et al.,

                       Defendants.
-----------------------------------------------------------------X
VITALIANO, D.J.

On related tort theories, plaintiffs have sued a string of enterprises along the commercial trail – manufacturer, distributor and seller – for injuries allegedly sustained as a result of the malfunctioning of a 7-quart electric pressure cooker. On October 7, 2016, the Court denied defendants' motions for summary judgment.[1] Dkt. No. 76. On November 17, 2016, defendant HSNi LLC ("HSNi") submitted a letter respectfully requesting that the Court issue a ruling that plaintiffs failed to show at summary judgment there were sufficient facts to support an award of punitive damages. HSNi correctly pointed out that such relief had been requested in its motion but had not been addressed. Dkt. No. 81; *see also* Dkt. No. 72-15 at 9-10. The Court now considers that request and, for the reasons discussed below, denies it.

## Discussion

HSNi argues that plaintiffs have failed to produce evidence to support any award of punitive damages and, therefore, seeks mandatory dismissal of those claims. Dkt. No. 72-15

---

[1] The memorandum and order deciding the summary judgment motions, *Scotto v. HSN, Inc.*, No. 13-CV-2471ENVRLM, 2016 WL 6195692 (E.D.N.Y. Oct. 21, 2016), sets forth the essential background facts and relevant standards of review. These details will not be unnecessarily repeated here. The familiarity of the parties with that decision is presumed.

at 9-10. HSNi goes on to outline its safety protocols and procedures. *Id.* HSNi asserts that it had employed experts to inspect and thoroughly vet the performance safety of the 7-quart pressure cooker before offering it for sale. *Id.* HSNi adds that the pressure cooker was also certified as compliant with certain safety standards prior to being released on the market. *Id.*

Plaintiffs, on the other hand, argue that "no less than 16 people complained of burn injuries from these units[,]" prior to the incident Michael Scotto alleges caused his injuries. Dkt. No. 73 at 24. Plaintiffs point to HSNi call center records demonstrating that HSNi had prior knowledge of critical and specific complaints about pressure cookers it sold:

- CUST AND CUST'S HUSBAND BOTH RECV'D 2ND DEGREE BURNS FROM USING THIS PRODUCT. WHEN OPENED LID AFTER STEAMING, BOILING WATER SPRAYED OUT AT THEM. HAVE BEEN MONITORING BURNS AND HAVE NOT YET GONE TO DR. WILL KEEP US POSTED.

- CUSTOMER RECEIVED 2ND DEGREE BURNS. THE LETTERS HAVE COME OFF THE TOP – THE CUSTOMER CAN NOT TELL WHETHER THE VALVE IS CLOSED OR OPEN. ALSO A METAL PIECE HAS COME OFF THE TOP.

Dkt. No. 75-4, Ex. FF at HSN MSJ 000202 (6/30/2008) (all capitalized in original); Ex. FF at HSN MSJ 000239 (11/14/2009) (all capitalized in original). Plaintiffs also highlight certain email complaints, including one complaint documenting that a customer's "son tried using the pressure cooker, [that the] pot exploded on [the] son's face and [that he] now has 2nd and 3rd degree burns." Dkt. No. 75-5, Ex. GG at HSN MSJ 000246. Another customer complained that the "lid blew off . . . [and] hot liquid burned [the customer's] chest and breast." Ex. GG at HSN MSJ 000254. Yet another, in December 2010, reported that the 7-quart pressure cooker had "exploded." Ex. GG at HSN MSJ 000278.

Under New York law, "punitive damages are awarded not for the unintended result of an intentional act, but for the conscious disregard of the rights of others or for conduct so reckless as to amount to such disregard." *Hartford Acc. & Indem. Co. v. Vill. of Hempstead*, 48 N.Y.2d 218, 227, 397 N.E.2d 737, 422 N.Y.S.2d 47 (1979). Such conduct may "consist of actions which constitute willful or wanton negligence or recklessness but need not be intentionally harmful." *Sweeney v. McCormick*, 159 A.D.2d 832, 834, 552 N.Y.S.2d 707, 709 (3d Dep't 1990) (citing *Home Ins. Co. v. Am. Home Prod. Corp.*, 75 N.Y.2d 196, 201, 550 N.E.2d 930, 933, 551 N.Y.S.2d 481 (1990)).

Here, the generally admissible evidence offered by plaintiffs in support of their demand for punitive damages – namely, the business records of HSNi documenting customer complaints, seemingly about the very issue that plaintiffs claim to have encountered – could, for example, demonstrate to a jury that defendant knew about certain dangers associated with the 7-quart pressure cooker, but failed to warn customers. *See, e.g.*, Dkt. No. 75-4, Ex. FF. Along those lines, in a failure to warn case involving the drug aminophylline, a jury awarded the plaintiff $13 million in punitive damages based on evidence which demonstrated that the defendant "was aware of certain risks involved in administering aminophylline suppositories to children," but that defendant "failed to warn the medical profession of the risks." *Home Ins. Co.*, 75 N.Y.2d at 202 (citation omitted). New York's high court determined that the "willful and wanton conduct like that found to have been committed [by defendant] could support a punitive damages verdict under New York law[.]"[2] *Id.* at 204-05; *see also Sclafani*

---

[2] The judgment for $13 million was recovered in an Illinois trial court. *Home Ins. Co.*, 75 N.Y.2d at 198. In follow-on litigation involving whether the defendant's insurance company was to pay the punitive damages, a question was certified by the Second Circuit to the New York Court of Appeals. *Id.* In answering that question, the Court of Appeals also

3

*v. Brother Jimmy's BBQ, Inc.*, 88 A.D.3d 515, 516, 930 N.Y.S.2d 566, 567 (1st Dep't 2011) (denying motion to dismiss plaintiff's request for punitive damages in defective design case). The fact that HSNi has proffered evidence of its diligent follow-up and thorough investigation of many of these customer complaints does not now entitle it to judgment as a matter of law on plaintiffs' demand for punitive damages. *See Kramer v. Showa Denko K.K.*, 929 F. Supp. 733, 742 (S.D.N.Y. 1996). What it does is create a genuine issue of material fact about defendant's conduct. *See Wang v. Marziani*, 885 F. Supp. 74, 79 (S.D.N.Y. 1995).

That fact dispute precludes summary judgment, but of course, does not preclude HSNi from renewing its application at an appropriate time in the form of a motion for a directed verdict or request that the question of punitive damages not be charged or submitted to the jury.[3] *See Doe v. Montefiore Med. Ctr.*, No. 12 CIV. 686 CM, 2013 WL 624688, at *7 (S.D.N.Y. Feb. 19, 2013), *aff'd*, 598 F. App'x 42 (2d Cir. 2015); *Khasidy v. Dovlatyah*, 43 Misc. 3d 1224(A), 992 N.Y.S.2d 158, 2014 WL 2016591 (Sup. Ct., Kings Cnty. 2014) (granting leave to defendant to move at the conclusion of trial for dismissal of plaintiff's punitive damages claims if defendant believed plaintiff failed to make a *prima facie* showing on the punitive damages claim).

---

determined that there was "no relevant difference between the rules governing punitive damages in New York and the comparable rules in Illinois." *Id.* at 203.

[3]     HSNi's motion is also premature given that the trial immediately facing the parties is on "the issues of liability only." Dkt. No. 76 at 15.

4

## Conclusion

For the foregoing reasons, summary judgment with respect to plaintiffs' punitive damages claims is denied.

So Ordered.

Dated: Brooklyn, New York
December 6, 2016

                                                        s/Eric N. Vitaliano
                                                        ERIC N. VITALIANO
                                                        United States District Judge